**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| CEDRIC WARREN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:25-CV-02625-JAR-RES |
| UNIFIED GOVERNMENT OF | ) |
| WYANDOTTE COUNTY AND | ) |
| KANSAS CITY, KANSAS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**DAPHNE HALDERMAN'S MOTION TO DISMISS**

Defendant Daphne Halderman, the Special Administrator of the Estate of Roger Golubski (Halderman), by counsel, and pursuant to Fed. R. Civ. P. 12(b)(6) moves this Court for dismissal of Counts 1-4, and 7-9 of Plaintiff Cedric Warren's *First Amended Complaint.*

I.    **NATURE OF THE MATTER BEFORE THE COURT & PROCEDURAL POSTURE**

Plaintiff Cedric Warren (Plaintiff) filed his First Amended Complaint (Complaint) on March 13, 2026.[1] The Complaint asserts claims against the Unified Government of Wyandotte County and Kansas City, Kansas (UG) and a number of its former police officers relating to Plaintiff Warren's and Dominque Moore's (Moore) arrest and conviction for the February 13, 2009 murders of Charles Ford and Larry LeDoux, and the attempted murder of Brandon Ford. The Complaint asserts claims against the Unified Government of Wyandotte County and Kansas City, Kansas (the "UG") and a number of its former police officers relating to Plaintiff Warren's and Dominque Moore's (Moore) arrest and conviction for the February 13, 2009 murders of Charles Ford and Larry LeDoux, and the attempted murder of Brandon Ford. One of the targets of Plaintiff's claims is former detective Roger Golubski (Golubski), who died on December 2, 2024—ten months before Plaintiff filed his original Complaint on October 30, 2025.[2]

---

[1] Doc. 51.
[2] Doc. 1.

Plaintiff originally named as defendant Golubski's only son, Matthew Golubski (Matthew) as personal representative of Golubski's estate. [3] However, because Matthew was not and never had been appointed as personal representative of Golubski's estate, Matthew moved to dismiss the claims against him. [4] In response, Plaintiff did what Plaintiff should have done prior to filing suit— open an estate and obtain the appointment of Halderman as special administrator pursuant to K.S.A § 59-2239. Plaintiff then sought leave to file the First Amended Complaint which named Halderman and removed Matthew as a defendant. [5]

The First Amended Complaint asserts the below claims against Halderman relating to Golubski's role as supervisor of the detectives who investigated the February 13, 2009 murders of Charles Ford and Larry LeDoux (the "Murders"):

| Count | Claim |
|---|---|
| Count 1 (§ 1983) | Due Process Violation for allegedly fabricating and suppressing evidence, and for an inadequate investigation. |
| Count II (§ 1983) | Malicious Prosecution |
| Count II (§ 1983) | Failure to Intervene |
| Count IV (§ 1983) | Conspiracy |
| Count V (§ 1983) | Supervisory Liability |
| Count VII (State Law) | Malicious Prosecution |
| Count VIII (State Law) | Intentional Infliction of Emotional Distress |
| Count XI: (State Law) | Negligent Infliction of Emotional Distress |

The crux of Plaintiff's claims against Golubski is that Golubski, in retaliation for being denied sex from Plaintiff's mother, suggested that Plaintiff may have been responsible for the Murders and signed off on their investigative reports as their supervisor. From there, Plaintiff attributes *all other officers'* actions to Golubski.

---

[3] *Id.*
[4] Doc. 21: Matthew's Motion to Dismiss.
[5] Doc. 47: Motion for Leave to Amend.

## II.    MOTION TO DISMISS AND § 1983 STANDARDS

To survive dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must plead facts sufficient to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory allegations and legal conclusions are insufficient, and Courts disregard them. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

As to Plaintiff's § 1983 claims, there is no vicarious liability, and a defendant can only be liable for *his own* conduct. *Brown v. Montoya,* 662 F.3d 1152, 1164 (10th Cir.2011). Thus, Plaintiff must plead *facts* establishing Golubski personally participated in each alleged constitutional violation. *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 768 (10th Cir. 2013). Further, Golubski[6] is entitled to claim qualified immunity from suit and liability unless Plaintiff's well-pleaded facts establish Golubski's actions violated clearly established constitutional rights. *Brown v. City of Tulsa*, 124 F.4th 1251, 1265 (10th Cir. 2025). Plaintiff bears the heavy burden of establishing Golubski violated his clearly established constitutional rights. *Martinez v. Carr*, 479 F.3d 1292, 1294–95 (10th Cir. 2007).

When determining if a right was clearly established, the Court "must not define the relevant constitutional right at a high level of generality." *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018) (cleaned up). "[B]efore the district court [can] determine the law was clearly established, it [has] to identify a case where an official acting under similar circumstances … was held to have violated" the right alleged. *Id.* at 1124. A district court errs by failing "to tether its clearly-established analysis to the particularized facts of any case decided before" the date of the alleged constitutional violation. *Id.* at 1124 (10th Cir. 2018) (cleaned up).

## III.    ARGUMENT AND AUTHORITIES

### A.    Plaintiff Has Failed to Allege Facts That Golubski Personally Participated in Fabricating or Concealing Evidence (Count 1).

---

[6] To avoid confusion, and because Halderman is a defendant in a representative capacity for Golubski's estate, the, this brief will refer to Golubski instead of Halderman except where the distinction is legally relevant.

Plaintiff alleges no facts that Golubski knew the evidence was fabricated or suppressed, much less his personal participation in such fabrication or suppression. Tellingly, while Plaintiff makes numerous salacious factual allegations about Golubski's alleged character and proclivities, Plaintiff makes remarkably few factual allegations about Golubski's conduct related to his claims. Instead, the Complaint relies on its reader's imaginative speculation to bridge the gap between providing Plaintiff's name as a potential suspect and a conspiracy to frame him.

The allegedly fabricated evidence is the identification made by Brandon Ford, which Plaintiff alleges other defendants obtained using suggestive interrogations and a suggestive photo array.[7] Relatedly, the alleged suppressed evidence is Ford's mental history and the source of the Plaintiff Warren's location.[8] But Golubski's only participation was allegedly (1) inserting Warren's name into the investigation as a potential suspect; (2) obtaining his location from an informant; (3) instructing detectives to put Warren's photo in an array; and (4) reviewing and signing his subordinate detective's reports.[9] These facts fail to state § 1983 claims.

### 1. Plaintiff pleads no facts demonstrating Golubski personally participated in fabricating or suppressing evidence.

Plaintiff seeks to hold Golubski liable for alleged fabrication and suppression of evidence, as opposed to under a supervisory liability theory which he alleges in Count 5. However, in a fabrication/suppression claim, the defendant himself must have "knowingly fabricated evidence" or knew of the suppressed evidence and deliberately withheld it. *Truman v. Orem City*, 1 F. 4th 1227, 1236 (10th Cir. 2021); *Ganley v. Jojola*, 402 F.Supp.3d 1021, 1094 n. 37 (D. N.M. 2019). That is because "[a]n essential element…is…direct personal participation…" *Jenkins v. Aramark Food Servs.*, 25-3119-JWL at *6 (D. Kan. Jul 16, 2025). Accordingly, Plaintiff was required to plead *facts* demonstrating Golubski himself knew the evidence was false or suppressed, and himself engaged in acts to falsify or suppress such evidence.

---

[7] Doc. 51 ¶¶ 4, 107-110.
[8] Doc, 51 ¶ 89.
[9] Doc. 51, ¶¶ 64–68, 90, 109

While the Complaint alleges Golubski first inserted Warren's name into the investigation and obtained his location from an informant, the Complaint makes no allegations that any information provided by Golubski, or one of his alleged informants, was used as the basis to arrest or detain Plaintiff. See *Buckley v. Fitzsimmons*, 509 U.S. 259, 281-82 (1993) (Scalia, J., concurring) ("… I am aware of, no authority for the proposition that the mere preparation of false evidence, as opposed to its use in a fashion that deprives someone of a fair trial or otherwise harms him, violates the Constitution"). Here, it was Ford's identification, not Golubski's alleged *suggestion* of Warren as a potential suspect that allegedly harmed him.

Further, the Complaint fails to establish that Golubski knew or personally participated in fabricating or suppressing evidence. Plaintiff does not allege Golubski was present or otherwise participated in the interrogation of Ford, or that he knew of the allegedly coercive or suggestive tactics were used during that process. The only factual allegations linking Golubski to the allegedly coerced identification is that Golubski was a supervisor on the investigation, reviewed and signed others' reports, and that Golubski instructed Block to include Warren's photo in the photo array.[10] But one cannot reasonably infer from the fact that a police Captain who reviewed a detective's report had knowledge of the falsity of the information it contained or knowledge of the tactics used to obtain an eyewitness identification. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (Finding that a warden who "rubber-stamped" denials of a prisoner's grievances did not personally participate in alleged violation).

In *Serna v. Co. Dept. of Corr.*, 455 F.3d 1146 (10th Cir. 2006), a Colorado's Director of State Prison reviewed periodic reports to authorize Special Operations Response Team ("SORT") activities within the prisons. The Director was sued in his individual capacity via § 1983 for excessive force of the SORT team. However, the Tenth Circuit determined, in part, that the Director's review of the periodic reports and general authorization of the SORT team's operations did not amount to personal participation in the underlying constitutional violation. *Id.* at 1153-

---

[10] Doc. 51 at ¶¶ 64, 104, 109.

1154. The same is true for the facts Plaintiff alleges. Simply reviewing reports and "signing off" on reports of a subordinate, without alleging facts to demonstrate Golubski *knew* the information was false or fabricated does not rise to the level of a constitutional violation. If it did, it would place a new duty on every superior officer who reviewed his subordinate's reports—whether for grammar, form, or completeness—to independently verify their accuracy.

Similarly, as to suppressing Brandon Ford's mental health, Plaintiff makes no allegations that Golubski (as opposed to "defendants" collectively[11]) was aware of Ford's unwell mental state. Importantly, "[i]n the context of a § 1983 action against multiple individual governmental actors, it is particularly important ... that the complaint make clear exactly who is alleged to have done what to whom …." *Stepp v. Lockhart*, 168 F.4th 1286, 1300 (10th Cir. 2026) (internal citations and quotations omitted). The Complaint fails to allege any facts that Golubski knew Brandon Ford, ever met Brandon Ford, or that he knew Brandon Ford was mentally unwell. As a result, the Complaint fails to allege facts that Golubski participated in knowingly suppressing exculpatory evidence. Accordingly, Golubski's estate cannot be liable for fabrication or suppression.[12]

Finally, as to the allegation that Golubski instructed detectives to include Plaintiff Warren's photo in the array shown to the eyewitness, that too is insufficient to establish a constitutional violation. If it were sufficient, any person who investigators knew did not commit the crime but had their photograph included would have had their constitutional rights violated. Put another way, it would make the use of photo arrays *per se* unconstitutional.

> 2. *The law did not clearly establish in 2009 that Golubski's conduct violated Plaintiff's constitutional rights.*

Here, even if the Court determines Plaintiff alleged facts are sufficient to demonstrate Golubski's personal participation in a constitutional violation, existing law did not clearly extend

---

[11] Doc. 55 at ¶¶ 8, 10 ("Defendants knew that Brandon's vulnerable state and mental health problems made him particularly susceptible to this police pressure." And "Defendants … visited Brandon at the facility ….")

[12] Plaintiff also claims that defendants collectively suppressed "that Golubski was the source of the identification of Mr. Warren and Mr. Moore." However, the Complaint makes clear that Ford, not Golubski, was the source of the identification as the perpetrator as opposed to a potential suspect.

liability for fabrication and/or suppression in 2009 for simply reviewing and signing subordinates' reports, absent knowledge that their contents were falsified or suppressed evidence, would meet the personal participation requirements for liability. To the contrary, as recently as 2006, the Tenth Circuit determined reviewing reports was insufficient to constitute personal participation. *Serna v. Co. Dept. of Corr.*, 455 F.3d 1146 (10th Cir. 2006).

Similarly, no clearly established law as of 2009 placed Golubski on notice that simply providing the name of a potential suspect to investigate and directing his subordinates to include that person's photo in a photo array violated clearly established law. If it did, every person depicted in a photo array—even the fillers—could bring a constitutional claim. Accordingly, Golubski is entitled to qualified immunity.

**B.      Golubski Is Entitled to Qualified Immunity on Plaintiff's Malicious Prosecution Claim (Count 2).**

In Count 2, Plaintiff seeks to hold Golubksi liable for malicious prosecution premised upon the same above-described actions in Count 1 and concludes that defendants' fabrication and suppression amounted to Golubski's malicious prosecution.

*1. Golubski's lack of personal participation.*

As addressed above, Plaintiff fails to allege that Golubski personally participated in the alleged acts of fabrication and suppression. Moreover, the Complaint fails to allege that Golubski's suggestion to investigate Warren formed the basis for them to detain or arrest Warren.

*2. Arguable probable cause existed.*

To succeed on a malicious prosecution claim, a plaintiff must allege that defendants lacked probable cause for the arrest, continued confinement, or prosecution. *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). In the qualified immunity context, an officer is entitled to qualified immunity in a malicious prosecution claim if the officer has even arguable probable cause. *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). "Arguable probable cause exists

7

where a reasonable police officer in the same circumstances and with the same knowledge and possessing the *same knowledge as the officer in question* could have reasonably believed that probable cause existed in light of well-established law." *Felders ex rel. v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014) (emphasis added) (cleaned up). Put simply, Golubski had probable cause to pursue Plaintiff's arrest and prosecution (even though he personally did not) "if facts and circumstances within [his] knowledge and of which he … ha[d] reasonably trustworthy information [were] sufficient to lead a prudent person to believe that the arrestee ha[d] committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).

The Complaint alleges that police (not Golubski) recovered a firearm hidden in an air vent of the house at which Plaintiff and Moore were found.[13] As Plaintiff alleges, DNA analysis revealed there were two partial DNA profiles on the handle of that firearm which were consistent with Moore's DNA and would be present in 1 in every 43 African Americans. Notably, Golubski is not alleged to have known, or suggested Moore's name in the investigation. Further, a single witness identification can establish probable cause to arrest. *Easton v. City of Boulder*, 776 F.2d 1441, 1449-1451 (10th Cir. 1985); *Price v. Cochran*, 205 F.Supp.2d 1241, 1249 (D. Kan. 2002) (probable cause established by witness statements). Because there are no allegations Golubski knew Ford's identification was allegedly falsely coerced, he was entitled to rely on the reports of his subordinates indicating Ford had made a positive identification. An officer who "acts in reliance on what proves to be the flawed conclusions of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable." *Halley v. Huckaby*, 902 F.3d 1136, 1150 (10th Cir. 2018) (citations and quotations omitted). Thus, given the firearm, Plaintiffs presence in the same house, the DNA on the firearm, and the eyewitness identification (and lack of knowledge of its fabrication), Golubski had arguable probable cause and his estate has qualified immunity.

---

[13] Doc. 55, ¶ 160.

Plaintiff's other allegations essentially assert that the police, not Golubski in particular, ignored other evidence, or failed to pursue other investigative avenues. But "[a] policeman ... is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Romero v. Fay,* 45 F.3d 1472, 1478 n.3 (10th Cir.1995) (citations and quotations omitted). At most, the failure to pursue other investigative leads is negligence, not a constitutional violation. *Id.* at 1478-79. But given Golubski's supervisory role, other detective's investigatory failures are insufficient to negate Golubski's arguable probable cause based on the above.

> 3. *Plaintiff fails to plead facts demonstrating Golubski caused his prosecution, conviction, and confinement.*

Additionally, in a malicious prosecution claim, Plaintiff must show that Golubski "caused" his arrest, continued confinement, and prosecution. *Wilkins v. DeReyes*, 528 F.3d at 799. But the chain of causation is broken where an independent actor becomes the proximate cause of the violation. See *Taylor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996) (cleaned up). Plaintiff alleges defendants Block and Koberlein obtained Ford's identification of Plaintiff and drafted reports that allegedly suppressed information and led to the prosecution.  In doing so, they "broke the chain of causation" as to any prior role played by Golubski and became the proximate cause of the prosecution.  Therefore, Golubski's estate cannot be liable for malicious prosecution.

**C.     Golubski Is Entitled to Qualified Immunity on Plaintiff's Failure to Intervene Claim (Count 3).**

Plaintiff claims that Golubski failed to intervene to prevent the fabrication, suppression, and malicious prosecution violations. But to be liable, Golubski must have observed the violation or had reason to know it was occurring and had a realistic opportunity to stop it. *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008). The Complaint's allegations do not establish Golubski observed or had reason to know about the alleged violations and failed to stop them.

Plaintiff does not claim that Golubski was present for the Ford interview or aware of any information that needed to be disclosed. Finally, Golubski would not have reason to know about the alleged violations based simply on him providing Warren's name to detectives. Even *if* Golubski had a retaliatory intent in supplying his name in the first instance for investigation, that would not negate the subsequent witness identification or DNA testing linking one of the involved firearms to Plaintiff's location and DNA profile.

Regardless, if the Court determines Golubski knew about the alleged violations and had a realistic opportunity to stop them, this Court has previously observed that the duty to intervene in cases not involving force was not clearly established at the time. *Coones v. Unified Gov't of Wyandotte Cnty.*, 22-CV-2447-JAR (D. Kan. Sep 30, 2024) at *47 ("Plaintiff has [not demonstrated] it was clearly established in 2008 that Defendants had a duty to intervene outside of the excessive force context") (citing *Bledsoe v. Carreno*, 53 F.4th 589 (10th Cir. 2022))[14]. Because this case does not involve force, Golubski is entitled qualified immunity.

### D.    Golubski Has Qualified Immunity on Plaintiff's Conspiracy Claim (Count 4).

Plaintiff accuses Golubski of conspiracy but to succeed, Plaintiff must show an agreement to pursue a common unconstitutional objective, concerted action in furtherance of that objective, and an actual deprivation of a constitutional right. *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-1228 (10th Cir. 2010); *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533-34 (10th Cir. 1998). "Conclusory allegations of conspiracy are insufficient…" *Id*. A plaintiff must allege more than meetings, coordinated timing, or the fact that multiple actors were involved in the same course of events. Instead, the plaintiff must allege specific facts showing an actual agreement and actual concerted action. *Id*.

---

[14] *Pray v. Sedgwick County*, 23-cv-01231-TC (D. Kan. Dec 17, 2025) at *18 ("Tenth Circuit precedent does not clearly establish an officer's duty to stop all types of constitutional violations").

As this Court pointed in in its Memorandum and Order (Doc. 55), Plaintiff was required to plead facts making "clear exactly *who* is alleged to have done *what* to *whom.*" (Doc. 55; quoting *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)); *see also Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989). While Plaintiff alleges Golubski inserted Plaintiff Warren's name in the investigation, he makes no factual allegations of any agreement between Golubski and anyone else.

1.      *Plaintiff alleges only other parallel conduct, not an agreement.*

Here, Plaintiff fails to allege specific facts showing an agreement. There are no allegations that Golubski made any agreements with others to violate constitutional rights.  Based on the well pleaded facts, at most, Golubski sought for personal reasons to inject Plaintiff Warren's name into the investigation.  This is the type of parallel conduct that cannot form the basis of a conspiracy claim. "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Shimomura v. Carlson,* 17 F. Supp. 3d 1120, 1130 (D. Colo. 2014) (quoting *Twombly*, 550 U.S. at 556-57); *Zorn v. City of Marion, Kansas*, 774 F.Supp.3d 1279, 1330-31 (D. Kan. March 28, 2025). Consequently, Golubski is entitled to qualified immunity.

2.  *Lack of Clearly Established Law.*

There are no cases prior to 2009 that would have put Golubski on notice that simply supplying a potential name for investigation in a shooting investigation, or to include that person's photo in a photo array, would constitute an agreement with subordinate officers to  violate that person's constitutional rights.   Accordingly, Golubski has qualified immunity.

**E.      Plaintiff's State Law Malicious Prosecution (Count 7) is Time Barred.**

Plaintiff's state-law malicious prosecution claim has a one-year statute of limitations. K.S.A. § 60-514(b). However, because Golubski died prior to Plaintiff filing his Complaint, K.S.A. § 59-2239 provides special limitations periods, commonly referred to as nonclaim statutes.

Importantly, "[n]onclaim statutes are considered jurisdictional, and … noncompliance … means that the district court should disallow [untimely] … claim[s] …." *In re Est. of Reynolds*, 266 Kan. 449, 456, 970 P.2d 537, 543 (1998).

K.S.A § 25-223 establishes three limitations periods. The first two relate to claimants seeking to obtain assets of the decedent's estate and requires a claimant to make a claim against the estate within four months of the published notice, but no later than six months after the decedent's death.[15] The third period relates to those asserting tort claims, which may be brought "within the period of the statute of limitations provided for an action on such claim." K.S.A. § 25-2239(2). However, "[f]or purposes of enforcing such claims, the estate of the decedent may be opened …, a special administrator appointed, **and** suit filed … within the period of the statute of limitations for such action." *Id.* (emphasis added).

A plain reading of § 59-2239(2) requires the (1) estate be opened; (2) an administrator appointed; and (3) suit filed, all within the one-year limitations period. In this case, that needed to be done on or before December 11, 2025. Instead, the estate was opened on January 7, 2026.[16] The special administrator was appointed on January 29, 2026.[17] And suit was filed *against* the special administrator on March 13, 2026, when the First Amended Complaint was filed.[18]  Thus, none of the prerequisites to bringing a tort claim against Goulbski's estate occurred "within the period of the statute of limitations.  As a result, the claim is time-barred by § 59-2239(2) and § 60-514(b).

Plaintiff may argue the First Amended Complaint relates back to the original complaint under Rule 15(c) or K.S.A. § 60-215(c), but "the Kansas Supreme Court has labelled the nonclaim statute as a 'special statute of limitations.'" *Bertels v. Farm Bureau Prop. & Cas. Ins. Co.*, 123

---

[15] Here, Golubski died on December 2, 2024, and Plaintiff did not make a claim against the estate—even if the original Complaint were construed as such—until October 30, 2025, well beyond the sixth-month deadline. As a result, "[a]ny recovery by [Plaintiff] … shall not affect the distribution of the assets of the estate …." Simply put, Plaintiff is barred from recovering from the Estate's assets.

[16] Doc. 47 at ¶ 5.

[17] *Id.* at ¶ 6.

[18] Doc. 51.

F.4th 1068, 1079 (10th Cir. 2024). Thus, § 59-2239(2) "should be read together and harmonized whenever possible, but to the extent a conflict between them exists, the ***special statute will prevail*** unless it appears the legislature intended to make the general statute controlling." *Id.* (emphasis added, quoting *In re Est. of Wolf*, 279 Kan. 718, 112 P.3d 94, 98 (2005)). Here, § 59-2239(2)— the nonclaim statute for torts—is a special statute of limitations requiring the estate must be opened, an administrator appointed, *and* suit filed within the limitations period.  Thus, there exists a conflict with Rule 15(c)'s relation back doctrine, the more specific § 60-2339(2) should govern.

In *Bertels*, the Tenth Circuit was presented with the question of whether the nonclaim statute of limitations could be tolled by K.S.A. § 60-515. 123 F.4th 1068, 1078 (10th Cir. 2024). While not identical, both K.S.A. § 515 and § 60-215(c) (and Rule15(c)) are statutory mechanisms to obviate a statute-of-limitations defense. The Tenth Circuit determined "the Kansas Supreme Court would conclude that tolling under K.S.A. § 60-515(a) is not available for claims against a decedent's estate under the nonclaim statute."  The Court reasoned that "[t]he rigid application of the deadlines in the nonclaim statute is grounded in compelling policy that estates be settled promptly …." *Id.* The Court further explained that the only circumstance in which the Kansas Supreme Court has not enforced nonclaim statutes to be enforce "to the letter" is "when the reason for the delay is that the law prohibited the creditors from initiating the litigation." *Id.* at 1081. Here, nothing precluded Plaintiff from taking the statutorily required steps of opening an estate, appointing an administrator, and suing that administrator within the one-year limitations period. Further, Plaintiff's claim fails for another reason—the suit *against the administrator* was not "commenced" within the limitations period.  K.S.A. § 60-203 explains that a lawsuit is deemed "commenced" at the time of the filing of the Petition *if* service is effectuated with 90 days of the filing, or 120 days if an extension is granted. *Vorhees v. Baltazar*, 283 Kan. 389, 406, 153 P.3d 1227, 1238 (2007). Here, while Plaintiff's original Complaint may have been filed within the one-year limitations period, it was *not* served on the administrator within 120 days. It was served on

13

March 17, 2026,—138 days after the original filing—well outside K.S.A. § 60-203's time frame to be construed as commenced on October 10, 2025.[19]

In *Vorhees*, the Court was not presented with the argument that § 59-2239(2) strictly mandates an estate be opened, an administrator appointed, and suit filed within the one-year statute of limitations period.  That said, the *Vorhees* Court determined that because a plaintiff generically named the "administrator of the estate" of the defendant then opened the estate and served the appointed administrator within the 120 time period prescribed by § 60-203, that no amendment was necessary, and the action was commenced within at the time the original petition was filed. But there, as the Court made clear, the plaintiff "timely filed his petition seeking appointment of the administrator, albeit ***the day before the statute of limitations ran*** …." *Id.* at 1239-40 (emphasis added).   Thereafter, the administrator was served 119 days after the Petition was filed "thus meeting the K.S.A. 60-203(a) time requirement for commencing an action." *Id.* at 1240 (cleaned up).[20]

Unlike in *Vorhees,* Plaintiff did *not* file his petition to have an administrator within the one-year statute of limitations.  He also failed to have the administrator served within 120 days of his original Complaint's filing. Because Plaintiff neither strictly complied with the nonclaim statute, nor served the administrator within the 120-days of filing the original complaint, Plaintiff's state-law malicious prosecution claim is time barred.

**F.      Plaintiff's Infliction of Emotional Distress Claims (Counts 8 and 9) Are Barred by the Statutes of Limitation and Repose.**

Emotional distress claims, both intentional and negligent, must "be filed within two years from the date of the act or conduct …." *Hallam v. Mercy Health Ctr. of Manhattan, Inc.*, 278 Kan. 339, 342, 97 P.3d 492, 495 (2004) (citations and quotations omitted); K.S.A. § 60-513(a)(4). Further, the statute of repose which states that "in no event shall an action be commenced more

---

[19] Doc. 52, Waiver of Service of Summons.

[20] In *Vorhees*, the Petition was filed on January 26, 2004 and service obtained on May 24, 2004 after obtaining an extension from the Court to serve the administrator pursuant to K.S.A. § 60-203. *Id.* at 392.

than 10 years beyond the time of the act giving rise to the cause of action." K.S.A. § 60-513(b). "Statutes of repose are generally substantive and abolish a cause of action after a specific time period, even if the cause of action may not have accrued yet. *Morrison v. Watkins*, 20 Kan. App. 2d 411, 423, 889 P.2d 140, 149 (1995). As a result, statutes of repose "generally lack tolling provisions." *Id.* (quoting *Harding v. K.C. Wall Products, Inc.,* 250 Kan. 655, 662, 831 P.2d 958 (1992)).

All acts giving rise to Plaintiff's infliction of emotional distress claims—both intentional and negligent—occurred no later than October 2010 when Plaintiff was convicted. As a result, Plaintiff had until October 2020 to commence his suits asserting intentional and negligent infliction of emotional distress. Counts 8 and 9 are time-barred.

### G.    Plaintiff's Negligent Infliction of Emotional Distress Claim (Count 9) Fails To State Allege the Required Physical Injury.

A negligent infliction of emotional distress claim requires Plaintiff to "establish that he or she has a qualifying physical injury …." *Anderson v. Scheffler*, 242 Kan. 857, 860, 752 P.2d 667 (1988). The physical injury must result from the defendant's negligently caused emotional distress and present shortly thereafter. *Hoard v. Shawnee Mission Medical Center*, 662 P.2d 1214, 1222 (Kan. 1983). Plaintiff fails to allege suffering a physical injury and instead makes boilerplate allegations of both physical and emotional damages.[21] Accordingly, Count 9 must be dismissed.

### IV.    CONCLUSION

Wherefore, for the above and foregoing reasons, Defendant Halderman, as special administrator of the Estate of Roger Goulbski, respectfully requests that this Court dismiss Counts 1, 2, 3, 4, 7, 8, and 9 against it, and for other relief this Court deems just and proper.

---

[21] Doc. 55 at ¶ 180.

15

Respectfully submitted,

**MCCAULEY & ROACH, LLC**

/s/ Morgan L. Roach
Morgan L. Roach  KS #23060
MCCAULEY & ROACH, LLC
527 W. 39th Street, Suite 200
Kansas City, Missouri 64111
Telephone: 816-523-1700
Facsimile: 816-523-1708
morgan@mccauleyroach.com
Attorney For Daphne Halderman

and

**ENSZ & JESTER, P.C.**

/s/ Chris Napolitano
CHRISTOPHER M. NAPOLITANO  KS #25499
1100 Main Street, Suite 2121
Kansas City, MO  64105
Telephone:   816-474-8010
Facsimile:   816-471-7910
Email:        cnapolitano@enszjester.com
**ATTORNEYS FOR DAPHNE
HALDERMAN**

## CERTIFICATE OF SERVICE

I hereby certify that, on May 12, 2026, the above and foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ Chris Napolitano
**Attorney for Daphne Halderman**

16